LAW OFFICES OF CHRISTIAN J. GARRIS
CHRISTIAN J. GARRIS  SBN 175808
633 West Fifth Street, 28th Floor
Los Angeles, California 90071
Telephone: (213) 624-2900
Facsimile: (213) 624-2901
Email: cjg@christiangarris.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA CARRIER, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> AETNA LIFE INSURANCE COMPANY and DOES 1-10, inclusive, <br><br> Defendants. | Case No. CV17-00956 <br><br> **COMPLAINT FOR:** <br><br> **BREACH OF PLAN (RECOVERY OF PLAN BENEFITS)** |

1. Plaintiff GLORIA CARRIER ("Plaintiff") complains and alleges:

### INTRODUCTORY ALLEGATIONS

2. This Court's jurisdiction is invoked pursuant to 29 U.S.C. § 1132(e). Plaintiff's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  Alternatively, Plaintiff's claims arise in part under ERISA and in part under state law claims falling within the pendent or supplemental jurisdiction of this Court, deriving from a common nucleus of operative facts.

3. Venue is properly within the Central District of California pursuant to

1  29 U.S.C. § 1132(e)(2), because the acts complained of have occurred within this District, because Defendant resides in or may be found within this district, and because the ends of justice so require.

4. Furthermore, this case is related to Case No. CV-14-03932-BRO(FFMx), *Carrier v. Aetna Life Insurance Co.* ("*Carrier I*"), previously filed by Plaintiff.

5. This action seeks damages for the denial of disability benefits under a group disability policy ("the Plan") established by Plaintiff's employer, Bank of America ("BofA"), and funded and administered by Defendant Aetna Life Insurance Company ("Aetna").

6. Plaintiff seeks benefits, attorneys' fees and costs, and other appropriate relief for the improper, erroneous and illegal denial of disability benefits owed to Plaintiff, a participant and beneficiary of the Plan.

## THE PARTIES AND THEIR RELATIONSHIPS

7. Plaintiff is, and at all times herein mentioned was, a resident and citizen of the State of California, County of Los Angeles. At all relevant times, Plaintiff was a participant and beneficiary of the Plan.

8. At all relevant times, the Plan was a group benefit plan that provided Plaintiff with protection against the risk of disability. Plaintiff was an employee of Boeing and was enrolled at all relevant times in the Plan.

9. The Plan that is the subject of this action is and was an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) sponsored by and established by Boeing for the purpose of providing peace of mind and security to its participants in the event that, among other things, a participant or beneficiary of the Plan should suffer disability.

10. Aetna is an insurance company authorized and licensed to conduct, and is indeed conducting, the business of insurance in the State of California.

law offices of christian j. garris
633 west fifth street, 28th floor
los angeles, california 90071
tel 213.624.2900
fax 213.624.2901

Plaintiff is informed and believes, and thereon alleges, that Aetna is a corporation domiciled in State of Connecticut, with its principal place of business in the State of California, County of Los Angeles.

## FIRST CAUSE OF ACTION
## FOR BREACH OF PLAN AND RECOVERY OF PLAN BENEFITS
### (Against All Defendants)

11. The allegations contained in all previous paragraphs are incorporated herein by reference as though set forth in full.

12. The disability Plan established by BofA was funded and administered by Aetna, Plan Number 0811383.

13. Plaintiff paid all premiums due for the disability coverage under the Plan.

14. The Plan promises to pay disability benefits of 60% of the employee's pre-disability income in the event of disability.

15. The Plan promises to pay benefits until at least age 67.

16. Plaintiff's date of birth is December 12, 1959.

17. Plaintiff was employed by BofA as a National Credit Manager, which is a senior management position requiring a very high level of cognitive functionality.

18. The Plan promises to pay disability benefits of 60% of the employee's pre-disability income per month in the event of disability.

19. Plaintiff became totally disabled under the terms of the Plan.

20. In or about 2009, Plaintiff was diagnosed with Stage III uterine cancer and underwent chemotherapy. The chemotherapy caused Plaintiff to develop cognitive problems and memory loss. Plaintiff was also diagnosed with peripheral neuropathy.

21. On or about July 17, 2009, Steven Applebaum, M.D., wrote a report

regarding Plaintiff's earlier diagnosis of Stage III uterine cancer.

22. In or about February 2012, Defendant began paying some disability benefits to Plaintiff.

23. In or about April 2012, Plaintiff's hip broke while she was sleeping. She underwent emergency surgery.

24. On or about November 5, 2012, Donald Boger, M.D., wrote, "Multi-level degenerative changes in the mid to lower cervical spine with severe disc degeneration C5-6 and C6-7 with mild to moderate spondylosis C4-5 through C6-7. There is multi-level mid cervical degenerative facet arthritis and uncovertebral hypertrophy with multi-level mid cervical foraminal stenosis."

25. On or about January 10, 2013, Lakshmi Tegulapalle, D.O, wrote that Plaintiff was suffering from osteoporosis.

26. In or about July 2013, Defendant ceased paying Plaintiff disability benefits.

27. Plaintiff submitted a written appeal to Defendant.

28. On or about February 7, 2014, Defendant rejected Plaintiff's appeal.

29. On or about March 27, 2014, Nouriel Niamehr, D.O., wrote that due to back pain "she is totally and permanently disabled and I recommend against trying to go back to work because it will be very risky for her health and may risk further fractures or even death if she has to take more pain medications to get through work."

30. Aetna has never had Plaintiff evaluated by any of its physicians. Every doctor who has ever seen Plaintiff has concluded that she is unable to work and totally disabled from her occupation and any occupation for which she is reasonably suited in light of her education, training, and experience.

31. Plaintiff's condition is permanent and stationary.

32. The Plan required payment of benefits within the jurisdiction of the above-entitled Court for a total amount to be shown at the time of trial.

33. The Plan was entered into within the jurisdiction of the above-entitled Court.

34. Plaintiff has pursued and exhausted all administrative appeals, which the Plan and Defendant denied.

35. In *Carrier I*, the parties filed trial briefs and the matter proceeded to trial. On July 24, 2015, the Court issued its Findings of Fact and Conclusions of Law. (Docket No. 31.) The Court ordered Aetna to pay Plaintiff's long-term disability ("LTD") claim through August 10, 2013, and remanded benefits for the subsequent time period back to Aetna to reconsider in light of the Court's opinion:

> "The Court thus finds that Defendant improperly terminated Plaintiff's LTD benefits on the basis that she was able to perform the material duties of her own occupation. Defendant is thus ORDERED to pay Plaintiff LTD benefits for the time period between July 11, 2013 and August 10, 2013. The Court further REMANDS this action to the plan administrator to determine, consistent with the factual findings and legal conclusions stated herein, whether Plaintiff meets the definition of "disability" under the "any reasonable occupation" standard, such that she should also be provided with LTD benefits subsequent to August 10, 2013."

(Docket No. 31, p. 27.)

36. In an August 17, 2015, judgment in *Carrier I*, the Court awarded benefits to Plaintiff. (Docket No. 33.) The Court subsequently awarded costs and attorney fees through the date of the Judgment. (Docket No. 41.)

37. Subsequent to the Judgment, Plaintiff has continually sought to obtain benefits in accordance with the Court's judgment of August 17, 2015. Aetna refused to pay any benefits.

38. On September 3, 2105, Plaintiff's counsel wrote to Aetna advising Aetna of the Judgment and that the LTD claim should now be reconsidered.

39. On September 14, 2015, Aetna requested records and other documents from Plaintiff.

40. On September 17, 2015, Plaintiff sent another letter to Aetna advising that all correspondence should go through counsel for Plaintiff.

41. On September 30, 2015, Aetna requested that Plaintiff's counsel provide proof of representation despite the fact that Plaintiff's counsel had already represented Plaintiff through trial.

42. On October 6, 2015, Plaintiff's counsel provided the requested proof of representation.

43. On October 7, 2015, Aetna requested another authorization from counsel for Plaintiff.

44. On October 8, 2015, Plaintiff's counsel provided the second proof of representation requested by Aetna.

45. On October 9, 2015, Plaintiff's counsel provided Aetna with the requested completed forms related to the claim.

46. On October 15, 2015, Aetna acknowledged receiving all of the requested forms but then also requested medical records.

47. On October 21, 2015, Plaintiff's counsel wrote to Aetna advising that the medical records had already been provided to Aetna but were included again with that letter. A total of 412 pages of medical records were included.

48. On November 4, 2015, Aetna wrote that it lost the records sent by counsel for Plaintiff on October 21, 2015. It also stated that it would now finally agree to pay the amount that was ordered to be paid by the Court in the August 17, 2015, Judgment.

49. On November 12, 2015, counsel for Plaintiff wrote back to Aetna:

> "Thank you for your letter of November 4, 2015. I included a CD-ROM with the letter that I mailed to you on October 21, 2015, to which you refer in your November 4 letter. So you obviously

received the letter. As referenced in my letter, included was a CD-ROM with 412 pages of records. Did Aetna misplace the disc?"

50. On January 26, 2016, Plaintiff's counsel provided all of the medical record authorizations that had been requested by Aetna.

51. On March 21, 2016, Aetna acknowledged that it had received all of the requested medical records.

52. On March 23, 2106, Plaintiff's counsel wrote in response:

I am in receipt of your March 21, 2016, letter. It is the first letter that I have received from Aetna since December 17, 2015.

A brief chronology of this claim is in order.

**On July 24, 2015, the Court Orders Aetna to Reconsider Benefits for the Time Period of August 10, 2013, and Thereafter**

On July 24, 2015, Aetna's counsel was served with an Order from the Court wherein Aetna was ordered to reconsider its denial of benefits for the period of August 10, 2013, and thereafter.

On September 3, 2015, I wrote to Rick Leman of Aetna regarding Ms. Carrier's claim after speaking with him on September 2, 2015. I advised that I was representing Ms. Carrier. I sent him a copy of the Order from the Court dated July 24, 2015, wherein the Court ordered that Aetna reconsider its denial of benefits for the period of August 10, 2013, and thereafter. The Court entered judgment on August 17, 2015. The decision of the Court in this case was published at *Carrier v. Aetna Life Insurance Co.*, 116 F. Supp. 3d 1067 (C.D. Cal. 2015).

On October 21, 2015, I sent to you 413 pages of documents regarding Ms. Carrier's claim. These documents had previously been provided to Aetna's attorneys on August 18, 2014. I also provided Aetna with all other forms and authorizations requested by Aetna:

law offices of christian j. garris
633 west fifth street, 28th floor
los angeles, california 90071
tel 213.624.2900
fax 213.624.2901

In response to your October 15, 2015, letter and following up on our telephone discussion of October 16, I have provided Aetna with the identity of all of the treating physicians as well as authorizations to obtain all of Ms. Carrier's medical records. Enclosed on a disc are all of the medical records that I previously provided to Aetna's counsel on August 18, 2014. (CARRIER0001-0412.)

At that point, Aetna had all of the information within its possession to make a determination on the claim. Indeed, it had all of the documents in its possession on August 18, 2014.

I received a letter from you dated November 4, 2015, wherein you stated that Aetna would comply with the Court's Order to pay benefits for the period of July 11, 2013, through August 9, 2013. No benefits have been paid for any period after August 9, 2013.

The last letter that I received from you is dated December 9, 2015, and faxed to me on December 17, 2015. In that letter, you stated that you would be sending yet another authorization to obtain medical records to my office. Once I received it, I immediately sent it back to you. I received no correspondence from you since December 17, 2015.

**Aetna Has Failed to Accept or Reject the Claim**

Every authorization that has been requested by Aetna has been promptly returned by Ms. Carrier.

Aetna has had all of Ms. Carrier's medical records for years now. There is no reason to refuse to pay Ms. Carrier's claim from August 10, 2013, to the present. The presence of additional records for subsequent time periods does not excuse Aetna's duty to make a

determination by the deadline set forth in the regulations. Aetna has had more than enough time to obtain all of the records—especially for the 2013 benefits.

Ms. Carrier has authorized Aetna to obtain her medical records in 2011, 2012, 2013, 2015, and 2016. Aetna has long been authorized to obtain the medical records for 2013. Since Aetna has unreasonably delayed in making a claims determination, Ms. Carrier's remedy under ERISA is to deem the claim denied and proceed back to federal court.

**Aetna Had 45 Days Plus a Possible Additional 45 Days to Review Ms. Carrier's Claim**

Under the regulations promulgated by the Secretary of Labor that govern this claim, Aetna had 45 days to make a decision on this claim. An additional 45 days could have been requested by Aetna prior to the expiration of the first 45 days, but no such request was made by Aetna.

Aetna thus had 45 days from July 24, 2015, the date that the Court's Order was served on Aetna's counsel, to make a determination on remand. The claim consideration deadlines apply after remand by Court to administrator. 29 C.F.R. § 2560.503-1(i)(3).

Obviously, the deadline under the regulations to make a determination on this claim expired long ago.

In *Wilson v. Walgreen Income Protection Plan*, 2015 WL 4528962 *5 (M.D. Fla. Jul. 27, 2015), the Court remanded an ERISA LTD benefits case back to the claims administrator to reconsider the claim. The claimant's attorney then sent records to the claims administrator. *Id*. The claims administrator failed to make a decision on the claim. After 95 days, the claimant filed a second lawsuit in

federal court because the claims administrator "failed to act on Plaintiff's claim within the time deadlines required by 29 C.F.R. § 2560.503-1." *Id*. at *6. The court ruled that because the regulatory time limits had been exceeded, the claim was ripe and the claimant could proceed against the plan. *Id*. at *12.

Likewise, in *Soltysiak v. UNUM Provident Corp*., 531 F. Supp. 2d 816, 818 (W.D. Mich. 2008), UNUM argued that it was still trying to get medical records, so the remand from the court back to UNUM should be tolled until the records could be obtained. The court rejected this argument:

> UNUM's reliance on the delay it encountered in obtaining releases for the Mayo Clinic is disingenuous at best. Plaintiff's back problems in 2005 have no bearing on the issue of whether Plaintiff was disabled due to chronic depression and anxiety in June 2002. UNUM's suggestion that it needs these records in order to address Plaintiff's disability claim appears to be no more than a delay tactic, particularly where UNUM did not make any effort during this same time period to address Plaintiff's psychiatric records.
>
> UNUM's contention that this case is not ripe for review because Plaintiff filed this case before it was able to obtain medical records necessary for a full and fair review of Plaintiff's disability claim is similarly without merit. Plaintiff is correct in his contention that the Administrative Record is limited to what existed at the time the claim was "deemed denied." When a claim is deemed denied, a claimant may bring a civil action to

— 10 —
**Complaint**

have the merits of his application determined, "just as he may bring an action to challenge an outright denial of benefits."

*Id*. at 819-20.

Therefore, unless I receive payment or a denial of the claim in ***fourteen (14) days of today's date***, I will have no choice but to deem the claim denied and resume litigation against Aetna.

53. On April 1, 2016, Aetna responded by denying the claim, paying nothing.

54. On May 11, 2016, Dr. Corrado wrote a letter in response to Aetna's April 1, 2016, denial letter, stating that Plaintiff was unable to perform any job.

55. On July 18, 2016, Dr. Zappaterra wrote that the information in Aetna's denial letter was false and that Plaintiff continued to be disabled: "It is my opinion that Ms. Carrier is totally disabled and would not be able to perform any occupation at this time. It is my opinion that her prognosis is poor and that her condition is permanent."

56. On July 20, 2016, Plaintiff appealed the denial of her claim to Aetna. She submitted the recent reports of Dr. Corrado and Dr. Zappaterra.

57. On September 16, 2016, within the deadline to do so, Aetna requested an additional 45 days to consider the appeal.

58. On November 18, 2016, Aetna rejected the appeal, paying nothing.

59. Plaintiff remains disabled from her occupation and any occupation for which she is reasonably suited in light of her training, education, and experience.

60. Plaintiff has pursued and exhausted all administrative appeals, which the Plan and Defendant denied.

61. As a direct and proximate result of Defendant's refusal to honor the terms of the Plan, Plaintiff has suffered contractual damages under the and other incidental damages and out-of-pocket expenses, including attorney fees and costs,

— 11 —
**Complaint**

all in a sum to be determined at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For benefits payable under the Plan to reimburse Plaintiff, a beneficiary and participant of the Plan, less amounts previously paid, plus interest;

2. For reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1);

3. For pre-judgment interest at the appropriate rate; and

4. For such other relief as the court deems appropriate.

Dated: February 6, 2017          LAW OFFICES OF CHRISTIAN J. GARRIS

By:_____
Christian J. Garris, Esq.

Attorneys for Plaintiff

law offices of christian j. garris
633 west fifth street, 28th floor
los angeles, california 90071
tel 213.624.2900
fax 213.624.2901